**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

CASE NO.: 20-23087 DPG

PATRICIA VICKERS, as Surviving
Spouse of JESSIE VICKERS,
deceased, and on behalf of the Estate
of JESSIE VICKERS,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS**

Defendant, Carnival Corporation ("Carnival"), respectfully requests this Honorable Court to enter an Order dismissing all of the claims in Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and states:

## I.   ISSUES BEFORE THE COURT

This case involves an unprecedented attempt to impose liability on a business for failing to anticipate a global pandemic and medical insights about the novel coronavirus (COVID-19) by national and international public health authorities. Maritime law, however, does not permit tort liability based on a failure to foresee harm.  The Court should dismiss the Complaint.

Plaintiff, Patricia Vickers, as surviving spouse of Jessie Vickers ("Decedent"), brought a two-count complaint against Carnival for negligence and vicarious liability for injuries allegedly leading to the death of Decedent due to the novel coronavirus[1] (COVID-19) following a cruise on the Carnival *Ecstasy*. [DE 1].  Plaintiff alleges that Carnival was negligent in allowing the cruise to depart and failing to implement measures that could have protected against the spread of COVID-19.  But missing from the Complaint are factual allegations to establish that Carnival actually knew or should have known about the specific risk-creating condition. To the contrary, Plaintiff admits that the *Ecstasy* departed in early March, which was before the World Health Organization declared that COVID-19 a pandemic and before the Centers for Disease Control (CDC) issued an order barring certain operations by U.S. cruise ship operators.  Absent allegations to establish that Carnival knew about the unique characteristics of COVID-19 before international and national public health authorities, Plaintiff's claims rest on nothing more than a failure to foresee generalized harm.  But courts have repeatedly recognized that maritime negligence cannot

---

[1] Coronaviruses are a large family of viruses, many of which can make people ill with sniffles or coughs. *See* https://www.webmd.com/lung/coronavirus-strains#1. SARS-CoV-2, which causes COVID-19, is one of several coronaviruses known to infect humans. *Id.*

rest on this thin read.  Indeed, in light of the COVID-19 pandemic, permitting Plaintiff's claims to proceed based on the allegations in the Complaint would similarly open the door to litigation against every business whose customers may have come into contact with the disease even though they operated consistent with public health mandates.

Even if Plaintiff stated a claim, the Complaint has numerous additional failures that compel dismissal.  First, Plaintiff failed to allege that she has standing and is the real party in interest such that she can maintain a claim on behalf of Decedent's Estate.  Second, Plaintiff's claims are governed by the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 30301 et seq. Finally, Plaintiff's claims for attorney's fees, and punitive damages and request for jury trial are impermissible and should be dismissed or stricken with prejudice.[2]

## II.   RELEVANT FACTS

Plaintiff and Decedent's cruise on the Carnival *Ecstasy* commenced on March 9, 2020, from Jacksonville, Florida and returned four days later after having visited the Bahamas. [DE 1, ¶ 6]. Plaintiff alleges that because COVID-19 was found on two vessels, one sailing in Japan and another on the West Coast of the United States, Carnival knew that the Centers for Disease Control was investigating COVID-19 in *California*. [DE 1, ¶¶ 7-9]. Because there were instances of COVID-19 on a Princess cruise ship in Japan, which had sailed in and around Asia (the location of the first known outbreak of COVID-19), and Oakland, California, which is over 2,700 miles

---

[2] Additionally, Plaintiff's venue allegation that the case was initially properly brought pursuant to 28 U.S.C. § 1391 is incorrect as the forum-selection clause in the cruise ticket contract specifies that all disputes shall be litigated in the Southern District of Florida. [DE 1, ¶ 4]. *See* Cruise Ticket Contract at 13 (c), attached *herein* as Exhibit 1. Plaintiff acknowledged the terms of the ticket contract as the basis of the removal of this action from the Southern District of Georgia to the Southern District of Florida. *See* 5:20-cv-00078-LGW-BWC, D.E. 7, "Joint Consent Motion To Transfer Action Pursuant To 28 U.S.C. §1404(a)" (*hereinafter* "Consent Motion"), and [ECF 8], "Consent Order Transferring Action To The U.S. District Court For The Southern District Of Florida, Miami Division, Pursuant To 28 U.S.C. §1404(a)" ("Consent Order").

from Jacksonville, Florida, Plaintiff alleges that Carnival, a separate corporation from Princess Cruises, Ltd., knew or should have known that "some passengers and/or crew" on the *Ecstasy* were experiencing symptoms consistent with COVID-19. [DE 1, ¶ 11]. Plaintiff does not allege that anyone on the *Ecstasy* was actually even diagnosed with COVID-19 at the time of the subject cruise or how Carnival had notice of any such diagnosis.

Among the list of things Plaintiff believes Carnival should have done is to have passengers engage in social distancing. [DE 1, ¶ 22].  However, this particular cruise occurred at the earliest stages of what was to become a global pandemic and there were no social distancing recommendations at that time – the White House introduced social distancing guidelines[3] on March 16, 2020, *after* the cruise had ended.[4]  Plaintiff also alleges that Carnival failed to conduct adequate screening and/or evaluation to determine whether passengers of the Decedent were experiencing COVID-19 symptoms because some passengers and/or crew who sailed on the *Ecstasy* on a prior cruise "*likely* had COVID-19." [DE 1, ¶ 23] (emphasis added). However, recent studies have shown that the pre-symptomatic and asymptomatic spread of COVID-19 has been medically documented.[5] Due to the well-established high percentage of asymptomatic or pre-

---

[3] The Court may take judicial notice of publicly available news reports, government publications, and medical studies without converting the motion to. *See Jacobs v. Bank of Am. Corp.*, No. 1:15-CV-24585-UU, 2017 WL 2361943, at *4 (S.D. Fla. Mar. 21, 2017), *on reconsideration,* No. 1:15-CV-24585-UU, 2017 WL 2361944 (S.D. Fla. Apr. 27, 2017) ("In considering a motion to dismiss under Rule 12(b)(6), the Court may [take] judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ).

[4] *See White House Announces New Social Distancing Guidelines Around Coronavirus*, NPR (Mar. 16, 2020, 4:37 PM), https://www.npr.org/2020/03/16/816658125/white-house-announces-new-social-distancing-guidelines-around-coronavirus.

[5] One recent medical study noted "[o]ur results indicate that silent disease transmission during the pre-symptomatic and asymptomatic stages are responsible for more than 50% of the overall attack rate in COVID-19 outbreaks. Furthermore, such silent transmission alone can sustain outbreaks even if all symptomatic cases are immediately isolated." *See* Seyed M. Moghadas et. al, *The*

symptomatic spread, nations, much less factories, bars, restaurants, grocery stores, beauty salons and barber shops have experienced difficulties identifying persons with COVID-19, testing for COVID-19 and containing the spread of the virus because so many people do not exhibit any symptoms at all. As a consequence, to this day nations have not yet determined how people can be properly screened for COVID-19.

## III.  LEGAL STANDARDS

Article III standing is jurisdictional and, therefore, a threshold inquiry. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).") "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in her complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.,* 501 F.3d 1244, 1251 (11th Cir. 2007). To survive this facial challenge to standing, the Complaint must include "general factual allegations of injury resulting from the defendant's conduct." *Florida Pub. Interest Research Grp. Citizen Lobby, Inc. v. E.P.A.,* 386 F.3d 1070, 1083 (11th Cir. 2004).

To survive a motion to dismiss, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[c]onclusory allegations, unwarranted factual

---

*implications of silent transmission for the control of COVID-19 outbreaks,* PROC. OF THE NAT'L ACAD. OF SCI. OF THE U.S. (July 6, 2020), https://doi.org/10.1073/pnas.2008373117; *see also* Leah F. Moriarty et al., *Public Health Responses to COVID-19 Outbreaks on Cruise Ships — Worldwide, February–March 2020, Centers for Disease Control & Prevention: Morbidity & Mortality Wkly. Rep.* (March 27, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm (noting that **46.5% of the passengers and crew on the Diamond Princess tested were asymptomatic**).

deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir. 2003). The allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 662. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of the cause of action" will not do. *Twombly*, at 555; "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal,* 556 U.S. at 678-79.

## IV.   FEDERAL MARITIME LAW GOVERNS PLAINTIFF'S CLAIMS

The law governing passenger suits against cruise lines is the general maritime law under a federal court's admiralty jurisdiction. *See e.g.* Schoenbaum, Thomas J., ADMIRALTY & MARITIME LAW §3-5 (4th ed. 2004). Nevertheless, "the Court 'ha[s] an independent duty to ensure admiralty jurisdiction exists before applying admiralty law.'" *Belik v. Carlson Travel Grp., Inc.*, 26 F. Supp. 3d 1258, 1264 (S.D. Fla. 2012) (quoting *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 900 (11th Cir. 2004)). Courts have admiralty jurisdiction over incidents occurring on navigable waters and bearing a significant relationship to traditional maritime activities. "'[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with marine activity.'" *Id.* (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043 (1995); *see also Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625 (1959); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989).

Plaintiff alleges Decedent contracted COVID-19 "on Defendant's ship Carnival *Ecstasy* and subsequently died." [DE 1, ¶3]. Plaintiff's claims, therefore, satisfy the location condition for admiralty jurisdiction as Plaintiff's causes of action arise from Plaintiff and Decedent's cruise in navigable waters. Plaintiff's claims also have the requisite connection to maritime activity as it is

6

indisputable that "the cruise line industry is maritime commerce." *Bird v. Celebrity Cruise Line, Inc.*, 428 F. Supp. 2d 1275, 1278–79 (S.D. Fla. 2005) (citing *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir. 2004)). Therefore, Plaintiff's claims, "satisfy conditions both of location and of connection with marine activity," and the Court has admiralty jurisdiction over this matter. *See Belik*, 26 F. Supp. 3d at 1264.

When the Court has admiralty jurisdiction, the general maritime law of the United States applies. In *Bird v. Celebrity Cruise Line, Inc.*, the Court held that "'[e]ven when ... the parties allege diversity of citizenship as a basis of subject matter jurisdiction, if admiralty jurisdiction also exists, federal maritime law governs the substantive issues in the case.'" 428 F. Supp. 2d at 1278 (quoting *Jackson v. Carnival Cruise Lines, Inc.,* 203 F. Supp. 2d 1367, 1373 (S.D. Fla. 2002)); *see also Lobegeiger v. Celebrity Cruises, Inc*., No. 11-21620-CIV, 2011 WL 3703329, at *16 (S.D. Fla. Aug. 23, 2011) ("With admiralty jurisdiction comes the application of substantive admiralty law" (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 106 S. Ct. 2295, 2298 (1986)). Accordingly, federal maritime law applies to the instant action.[6]

## V.   PLAINTIFF'S CLAIMS MUST BE DISMISSED

### A. Plaintiff Does Not Have Standing to Bring Suit and Is Not The Real Party In Interest

"A party has standing to prosecute a suit in the federal courts only if he is the 'real party in interest' as that term is defined under Fed. R. Civ. P. 17(a)." *U.S. v. 936.71 Acres of Land, More*

---

[6] Carnival additionally notes that Plaintiff and Decedent's ticket contract for the subject cruise stipulates that any dispute shall be governed by federal maritime law. *See* Exhibit 1 at section 13 (e), ("any and all disputes whatsoever arising out of or relating to this Contract or Guest's Cruise as well as the interpretation, applicability and enforcement of this Contract shall be governed exclusively by the general federal maritime law of the United States."); *see also* Consent Motion; Consent Order.

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

*or Less, in Brevard Cty., State of Fla.,* 418 F.2d 551, 556 (5th Cir. 1969).[7] "Only a real party in interest has the capacity to bring a lawsuit." *See Tennyson v. ASCAP*, 477 F. App'x 608, 610 (11th Cir. 2012) (citing Fed. R. Civ. P. 17). The purpose of Rule 17 "is to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter." *Celanese Corp. of Am. v. John Clark Indus.*, 214 F.2d 551, 556 (5th Cir. 1954).

Pursuant to maritime law, the personal representative of a decedent's estate is the only real party in interest with standing to sue on behalf of the estate. *See Ridley v. NCL (Bahamas) Ltd.*, 824 F. Supp. 2d 1355, 1362–63 (11th Cir. 2010) ("It is clear that general maritime law and Florida law limit recovery for wrongful death to the personal representative."); *see also* Fla. Stat. § 768.20 ("The [wrongful death] action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages… caused by the injury resulting in death.").  "[t]here is no individual right to recovery by an estate's beneficiaries even where, as here, one of those beneficiaries is the former spouse of the decedent." *Ridley*, 824 F. Supp. 2d at 1363.

Here, Plaintiff alleges that she brings this action as the "Surviving Spouse" and identifies herself as "the wife of Jessie Vickers, deceased" rather than as the personal representative of the Estate of the Decedent. [DE 1, ¶1].  Accordingly, Plaintiff has failed to allege that she is the real party in interest with the capacity to bring suit on behalf of the Estate of Mr. Vickers, and, therefore, this suit should be dismissed.

---

[7] Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

### B. Plaintiff Has Not and Cannot Allege a Claim for Negligence

#### 1. *Plaintiff failed to allege facts to support her negligent failure to warn claim*

"It is a settled principle of maritime law that a shipowner owes passengers the duty of exercising reasonable care under the circumstances."[8] *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959). This standard of care "requires, as a prerequisite to imposing liability, that the carrier have actual or constructive notice of the risk-creating condition." *See Keefe,* 867 F.2d at 1322 (11th Cir. 1989). A cruise line must warn passengers only of those dangers that "the cruise line knows or reasonably should have known," and "which are not apparent and obvious to the passenger." *See Smolnokar v. Royal Caribbean Cruises Ltd.,* 787 F. Supp. 2d 1308, 1322–34 (S.D. Fla. 2011) (Jordan, J.).

In Count I, Plaintiff speculates that Carnival failed to warn passengers before, during or after the conclusion of the cruise that they could be, may have been or were in fact exposed to COVID-19 during their stay on Carnival's ship, but Plaintiff fails to allege *any* underlying facts to establish that Carnival knew or should have known about the specific risk-creating condition. Here, before a pandemic occurred and based on incidents that happened on vessels thousands of miles away from the *Ecstasy,* Plaintiff speculates that "some passengers and/or crew which had sailed on the *Ecstasy* before the Vickers' trip *likely* had COVID 19 a/k/a 'corona virus' and that there was a *possibility* that they could contract the virus while aboard its cruise ship." [DE 1, ¶ 14] (emphasis added).  Also, Plaintiff alleged the conclusion that Carnival, "through its agents, employees and/or personnel knew or had reason to know that some passengers and/or crew which had sailed on the *Ecstasy* before the Vickers' trip *likely* had or were experiencing symptoms consistent with COVID

---

[8] Plaintiff's Complaint also fails to allege the correct duty of care set forth in *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959).

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

19 a/k/a 'corona virus' before departing," but no facts are alleged as to how Carnival knew or should have known of the illness other than two outbreaks on vessels owned by another company as far away as Japan and California. [DE 1, ¶ 11] (emphasis added). Finally, based on the two outbreaks thousands of miles away, Plaintiff alleged Carnival should have known that crew or passengers "*likely*" had COVID-19 without any factual support. [DE 1, ¶ 23]. If allowed to stand, speculative allegations such as this would convert the cruise ship operator into an insurer of passenger health and safety. But courts have routinely rejected such speculative claims. *See Isbell v. Carnival Corp.,* 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) ("Defendant is not the insurer of the safety of the passengers. Merely because an accident occurs, a carrier does not become liable to a passenger").

Here, Plaintiff's allegations relate solely to vessels operated by other companies thousands of miles away without drawing any factual connection whatsoever to any knowledge that Carnival actually had or should have had that anyone on the *Ecstasy* had COVID-19 at a time when there was no pandemic and before the CDC issued any order barring operations or even recommending social distancing. *See Everett v. Carnival Cruise Lines,* 912 F.2d 1355, 1359 (11th Cir. 1990) (rejecting argument that "Carnival should have known that there was a danger of passenger injury because it was the owner and operator of the ship," and that "notice of the defect can be imputed to Carnival inasmuch as it created the threshold and maintained it"); *Galentine v. Holland Am. Line–Westours, Inc.,* 333 F. Supp. 2d 991, 996 (W.D. Wash. 2004) (Pechman, J.) (rejecting argument that cruise line should be held liable absent actual or constructive notice "if it created an unsafe or foreseeably hazardous condition"); *see, also Harding v. NCL (Bahamas) Ltd.*, 90 F. Supp. 3d 1305, 1307–08 (S.D. Fla. 2015) (dismissing Plaintiff's complaint as Plaintiff failed to allege sufficient facts regarding notice beyond conclusory statements). Plaintiff's claims are

predicted on such impermissible general foreseeability allegations and cannot proceed as alleged because such allegations would open the door to litigation against every business whose customers may have come into contact with the disease even though they operated consistent with public health mandates in effect at the time.

In *Koens v. Royal Caribbean Cruises, Ltd.,* the court dismissed the plaintiff's negligence claim because he failed to assert allegations establishing that the cruise line knew or should have known of dangerous conditions on the specific tour during which he was injured. 774 F. Supp. 2d 1215, 1219 (S.D. Fla. 2011). Instead, Koens merely alleged the cruise line had actual knowledge about the "rising crime rate in Nassau," and as support, alleged that a group of the same cruise line's passengers were similarly assaulted at gunpoint one month prior to his own assault, during an excursion that the same cruise line sponsored. *Id.* at 1220. The court, however, found that such allegations were insufficient to trigger a duty. *Id.* The court further ruled that without duty there can be no breach and Koens had failed to state a cause of action for negligence. *Id.*

Broad, conclusory allegations such as those in the Complaint without no underlying factual allegations based on a theory of the general foreseeability of the potential existence of a virus that someone may have had without any supporting facts is quantumly insufficient to state a claim for relief and would expand liability exponentially if allowed to stand. *See Harding,* 90 F. Supp. 3d at 1307–08.

### 2. Plaintiff Failed to Allege Causation

Plaintiff's negligence claim must also be dismissed for failure to allege causation. The Complaint is vague, conclusory, and lacks facts that would indicate how the Decedent became ill from COVID-19 other than through the sheer speculation of Plaintiff. *See e.g.,* [DE 1, ¶¶ 11, 26-27]. Plaintiff simply alleges that a passenger or crew member who had sailed on a prior voyage

11

"*likely had* or were experiencing symptoms consistent with COVID-19" before departing and since the Decedent became ill shortly after his cruise, the Decedent "could not have contracted COVID 19 from any other source" because he sheltered in place immediately after the cruise. *Id.* Additionally, aside from Plaintiff's sheer supposition about how the Decedent contracted COVID-19, Plaintiff alleges proximate causation in a purely conclusory manner: "Plaintiff sustained injuries and damages as a direct and proximate cause of Defendant's negligence" [DE 1, ¶¶ 27. 38, 42].  Assuming for purposes of this motion that Decedent did, in fact, become ill shortly after the cruise, COVID-19 could have been contracted at any time prior to the cruise, during an outing ashore or after the cruise. There is simply nothing alleged in the Complaint, nor can Plaintiff allege, that the Decedent's COVID-19 was caused by Carnival when it could have been contracted in any number of ways other than through any negligence on the part of Carnival.

According to the CDC website, a study "reported that 97.5% of persons with COVID-19 who develop symptoms will do so within 11.5 days of SARS-CoV-2 infection."[9]  Given that the cruise lasted four days, Plaintiff could have contracted the virus in Georgia before the trip, on the way to the cruise, in the Bahamas while the Decedent was off the vessel or on the way back home. Rank speculation and conclusory allegations require dismissal. *Iqbal*, 556 U.S. at 678; *see also Oxford Asset Mgmt., Ltd., v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("conclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts will not prevent dismissal."); *Thompson v. Carnival Corp.,* 174 F. Supp. 3d 1327, 1340 (S.D. Fla. 2016) (plaintiff's

---

[9] *See Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19), Coronavirus Disease 2019 (COVID-19),* CTRS FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last updated June 30, 2020) (citing Lauer SA, Grantz KH, Bi Q, et al., *The Incubation Period of Coronavirus Disease 2019 (COVID-19) From Publicly Reported Confirmed Cases: Estimation and Application*, ANNALS OF INTERNAL MED., (Mar. 10, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7081172/)).

complaint dismissed because "it is evident that [plaintiff's] Complaint rests on '"naked assertion[s]" devoid of 'further factual enhancement.'" (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557)).

*Rinker v. Carnival Corp.*, is an analogous case where a passenger who developed meningitis, bacteremia, and osteomyelitis while aboard a vessel, filed suit against the cruise line for negligence and other claims and among the claims the cruise line moved to dismiss, was the negligence claim. 753 F. Supp. 2d 1237, 1242 (S.D. Fla. 2010). The court dismissed the Complaint based on Plaintiff's failure to allege proximate cause because the plaintiff did not allege any facts that demonstrate any alleged breaches of duty were the proximate cause of her illness. *Id.* at 124 (nothing indicated how plaintiff was injured because of the failures alleged in the plaintiff's amended complaint and therefore, the court ruled, the pleading failed to meet the requirements of *Iqbal* and *Twombl*y).

In *Brown v. Oceania Cruise, Inc.,* the Court also dismissed a negligence claim because the complaint was lacking as to how the plaintiff incurred her alleged injury particularly where, as here, the illness and/or injuries could have been caused in a manner inconsistent with conduct for which the defendant could not be liable. 2017 WL 10379580, **3-4 (S.D. Fla. Nov. 20, 2017). Like the deficient negligence claim in *Brown,* Plaintiff summarily alleges proximate causation and speculates that the Decedent was injured and contracted COVID-19 as a result of the breaches alleged in the Complaint.

The pleading here fails to provide any facts to plausibly tie causation to Defendant since Plaintiff could have contracted the illness any time prior to boarding or from *presymptomatic* or *asymptomatic* passengers, while the Decedent was ashore in the Bahamas or after the cruise. *See supra,* note 3-5. There are simply no facts alleged in the Complaint to tie Carnival's alleged breach

13

of its duties to any injury suffered by the Decedent.  How, when, and where does Plaintiff assert Decedent contracted COVID-19?  The Complaint in this case is devoid of any such facts that could plausibly support that any alleged breach of duty by Carnival (as opposed to anyone else) that was the proximate cause of Decedent's injury.  Accordingly, Plaintiff has failed to plead a claim for negligence upon which relief can be granted, and Plaintiff's Complaint should be dismissed *with prejudice*.

### C. The Death on the High Seas Act ("DOHSA") Governs Plaintiff's Claims

As noted above, federal maritime law governs this case.  Plaintiff alleges that the Decedent sustained injury during "a four (4) day cruise to the Bahamas." [DE 1, ¶6].  As Plaintiff has alleged injury during a cruise in navigable waters, the Death on the High Seas Act ("DOHSA") is the law to be applied in this action.  DOHSA is the sole federal wrongful death statute under maritime law for deaths which occur on or stem from injuries suffered on the high seas. Where DOHSA applies, it is the sole, exclusive remedy. *See Perricone v. Carnival Corp*., No. 15-20309-CV, 2016 WL 1161214, at *5 (S.D. Fla. Mar. 24, 2016) ("Where an action for wrongful death exists under DOHSA, the statute provides the 'exclusive remedy.'" (quoting *Dooley v. Korean Air Lines Co.*, 524 U.S. 116, 117 (1998))); *Ridley*, 824 F. Supp. 2d at 1361.  The fact that Decedent's death occurred after his and Plaintiff's cruise had ended does not preclude DOHSA's applicability to Plaintiff's case. [DE 1, ¶28]. DOHSA applies to any wrongful death action where the injury resulting in death occurred on the high seas, irrespective of where the decedent is pronounced dead.  *See Balachander v. NCL (Bahamas) Ltd.*, 800 F. Supp. 2d 1196, 1200–01 (S.D. Fla. 2011).  As DOHSA applies to Plaintiff's claims, Plaintiff's claims under Georgia law must be dismissed and Plaintiff's damages must be limited to those available under DOHSA.

14

### D. Plaintiff's Vicarious Liability Claim Should Be Dismissed

First, Plaintiff's vicarious liability fails to state a claim as it is premised on Plaintiff's direct negligence claim, which, as discussed above, fails to state a claim. As such, Plaintiff's vicarious liability claim also fails. *See Gharfeh v. Carnival Corp.*, 309 F. Supp. 3d 1317, 1323 (S.D. Fla. 2018) (to sustain a vicarious liability claim "the underlying negligence claim must be adequately asserted.") (citing *Rojas v. Carnival Corp.*, 93 F.Supp.3d 1305, 1311 (S.D. Fla. 2015)); *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1355–57 (S.D. Fla. 2016) (dismissing the plaintiff's vicarious liability claim because plaintiff's underlying negligence claim was insufficiently pled).

Second, Carnival can only be held liable in negligence through the alleged acts of its employees, which renders Plaintiff's claim for vicarious liability redundant and unnecessary. *See Giambra v. Wendy's Int'l, Inc.*, No. 8:08-CV-2016-T-27EAJ, 2009 WL 1686677, at *2 (M.D. Fla. June 16, 2009) (dismissing a negligent supervision claim as "duplicative" of a *respondeat superior* claim when both claims were based on the same facts of the alleged negligence claim); *Shaw v. Pizza Hut of Am., Inc.*, No. 8:08-CV-27-T-24-EAJ, 2009 WL 1519881, at *1 (M.D. Fla. June 1, 2009). Here, Plaintiff has not alleged any facts that would support a separate claim for vicarious liability. Accordingly, Count II should be dismissed *with prejudice.*

### E. Plaintiff's Request For A Jury Trial Should be Stricken

Plaintiff has a requested a jury trial. [DE 1, at p.9]. However, as Plaintiff's claims should be governed by DOHSA, Plaintiff would have no right to a trial by jury.[10] *See Tallentire v. Offshore*

---

[10] Carnival is cognizant of the representation in *Leslie v. Carnival Corp.*, 22 So. 3d 561, 564–65 (Fla. 3d DCA 2008), that it would not oppose a jury trial in Federal matters where there is no diversity and where a party would be otherwise entitled to a jury trial if the matter had been brought in State court. However, where DOHSA applies, a passenger is not entitled to a jury trial whether it is brought in Federal or State court.

*Logistics*, 800 F.2d 1390, 1391 (5th Cir. 1986); *LaCourse v. Def. Support Servs. LLC*, No. 3:16CV170-RV/CJK, 2018 WL 7342153, at \*2 (N.D. Fla. Oct. 31, 2018), *reconsideration denied*, No. 3:16CV170-RV/CJK, 2018 WL 7342150 (N.D. Fla. Dec. 4, 2018). Courts regularly deny plaintiffs' requests for jury trials in cases where DOHSA applies. *See Reistetter v. Royal Caribbean Cruises Ltd.*, No. 08-20462-CIV-SEITZ, 2008 WL 5397139, at \*1 (S.D. Fla. Dec. 18, 2008) ("Defendant Royal Carribean's [sic] Motion to Strike Jury Demand is granted, and Count I [DOHSA] of the Amended Complaint shall be tried in admiralty without a jury.")

The case of *Lasky v. Royal Caribbean Cruises, Ltd.*, 850 F. Supp. 2d 1309 (S.D. Fla. 2012), is instructive. There, the Court denied the plaintiff's request for a jury trial because DOHSA does not convey such a right. *Id.* at 1313–14. The Court held that even though Plaintiff had only alleged diversity jurisdiction, as Plaintiff has in the instant case, she was not entitled to a jury trial because the court's diversity jurisdiction was concurrent with its admiralty jurisdiction. *Id.* Specifically, the Court stated there is no right to a jury trial for claims governed by DOHSA where "the existence of ... diversity of citizenship, can lead to no different result, at least as to the wrongful death claims. Diversity of citizenship creates only an additional basis for federal jurisdiction; it does not enlarge the parameters of the substantive remedy upon which a claim is based." *Id.* at 1314. As DOHSA applies to the instant matter, Plaintiff's jury trial demand must be stricken.

### F. Plaintiff's Request for Attorney's Fees Should be Stricken

"A party is not entitled to attorney's fees in an admiralty case unless fees are statutorily or contractually authorized." *Coastal Fuels Mktg., Inc. v. Fla. Exp. Shipping Co.*, 207 F.3d 1247, 1250 (11th Cir. 2000). Plaintiff has not alleged that any federal statute allows for attorney's fees for the claims she brings in her Complaint, thus she is not entitled to them. *See Doe v. Celebrity*

*Cruises*, 145 F. Supp. 2d 1337, 1348 (S.D. Fla. 2001).  Accordingly, the Plaintiff's demand for attorney's fees should be stricken.

### G. Plaintiff's Claim for Punitive Damages Should be Stricken

#### 1. Punitive Damages are Not Available Under General Maritime Law

Plaintiff's claim for punitive damages should be stricken based on the recent maritime decisions in *The Dutra Group v. Batterton* and *Eslinger v. Celebrity Cruises, Inc. See The Dutra Group v. Batterton*, 139 S.Ct. 2275, 2287 (2019); *Eslinger. v. Celebrity Cruises, Inc.*, 772 F. App'x 872 (11th Cir. 2019). "'A motion to strike may be used to strike any part of the prayer for relief when the recovery sought is unavailable as a matter of law.'" *Lopez v. Wachovia Mortg.*, No. 209-CV-01510-JAM-DAD, 2009 WL 4505919, at *5 (E.D. Cal. Nov. 20, 2009) (quoting *Bassett v. Ruggles et al.*, 2009 WL 2982895 (E.D. Cal. Sept.14, 2009)).

In *Batterton*, the Supreme Court decided the issue of whether punitive damages can be awarded in an unseaworthiness claim.[11] *See Batterton*, 139 S.Ct. at 2283. After a thorough analysis of the overwhelming historical evidence suggesting punitive damages are not available for unseaworthiness claims, the Court ruled that it could not sanction such a novel remedy unless it is required, to maintain uniformity with Congress's clearly expressed policies and considered the remedies available under Jones Act claims. *Id.* at 2284. Justice Alito noted that *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990) established that the Court should look primarily to legislative enactments for policy guidance when exercising its inherent common-law authority over maritime and admiralty cases, while recognizing that such statutory remedies may be supplemented to

---

[11] A claim for unseaworthiness is a personal injury cause of action available to seaman, a class of claimants that are considered "wards of the Court." enjoying special protection because of the unique circumstances surrounding their employment.  *See Kurtz v. C.I.R.*, 575 F.3d 1275, 1277 (11th Cir. 2009).  The Decedent in this matter was a passenger, yet Plaintiff seeks greater damages for personal injuries than that available to a ward of the Court.

**FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

"achieve the uniform vindication" of the policies served by the relevant statutes. *Batterton*, 139 S.Ct. at 2287 (citing *Miles*, 498 U.S. at 27).

In *Atlantic Sounding Co., Inc. v. Townsend*, and other legal authorities pre-dating *Batterton*, Courts held punitive damages were available under the general maritime law provided that a plaintiff could make a showing of intentional conduct. *See Atlantic Sounding*, 557 U.S. 404, 424-25, 129 S. Ct. 2561, 2574 (2009). Distinguishing the ruling in *Atlantic Sounding*, Justice Alito underscored that the holding in *Atlantic Sounding* was limited:

> In *Atlantic Sounding*, we allowed recovery of punitive damages, but we justified our departure from the statutory remedial scheme based on the established history of awarding punitive damages for certain maritime torts, including maintenance and cure. 557 U.S. at 411–414, 129 S.Ct. 2561 (discussing cases of piracy and maintenance and cure awarding damages with punitive components). We were explicit that our decision represented a gloss on *Miles* rather than a departure from it. *Atlantic Sounding*, supra, at 420, 129 S.Ct. 2561 ("The reasoning of *Miles* remains sound"). And we recognized the importance of viewing each claim in its proper historical context. "'[R]emedies for negligence, unseaworthiness, and maintenance and cure have different origins and may on occasion call for application of slightly different principles and procedures.'" 557 U.S. at 423, 129 S.Ct. 2561.

*Batterton*, 139 S.Ct. at 2283. The Court therefore ruled that punitive damages are not a traditional remedy for unseaworthiness and "[t]he rule of *Miles*—promoting uniformity in maritime law and deference to the policies expressed in the statutes governing maritime law—prevents us from recognizing a new entitlement to punitive damages where none previously existed." *Id.* at 2287 ("We hold that a plaintiff may not recover punitive damages on a claim of unseaworthiness").

*Eslinger v. Celebrity Cruises, Inc.*, was decided just four (4) days after *Batterton*. In *Eslinger*, a plaintiff appealed an order dismissing her claim for loss of consortium resulting from an injury her husband sustained while a passenger on a cruise ship, arguing that the district court erred in relying on Eleventh Circuit precedent foreclosing loss of consortium claims after the Supreme Court decided *Atlantic Sounding*. 772 F. App'x 872 (11th Cir. 2019). *Eslinger*, 772 F. App'x at

18

872. The Eleventh Circuit expressly stated that: "Our court has held that plaintiffs may not recover punitive damages, including loss of consortium damages, for personal injury claims under federal maritime law." *Id.* at 872-73 (citing *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997) and *Lollie v. Brown Marine Serv., Inc.*, 995 F.2d 1565, 1565 (11th Cir. 1993) ("[N]either the Jones Act nor general maritime law authorizes recovery for loss of society or consortium in personal injury cases.")). "[N]othing in the *Atlantic Sounding* decision undermines our prior holdings." *Id.* at 873. The Eleventh Circuit's *Eslinger* decision that punitive damages are not available for maritime personal injury cases is completely consistent with the Supreme Court's ruling in *Batterton* that punitive damages are not available in maritime crew cases of unseaworthiness. *See Batterton,* 139 S.Ct. at 2275 ("The lack of punitive damages in traditional maritime law cases is practically dispositive.").

In another recently decided case, the Court struck a punitive damages claim based on the holding in *Eslinger. See Doe v. NCL (Bahamas) Ltd.,* No.19-cv-21486 (Altonaga, J), [ECF 45] (S.D. Fla., Aug. 29, 2019), attached herein as Exhibit 2. At the hearing on NCL's motion to dismiss the punitive damages claim, the Court, stated that:

> Judge's Martin, Newsom, and Dubina wrote [in Eslinger] 'Our Court has held that Plaintiffs may not recover punitive damages for personal injury claims under federal maritime law.' That's what the Plaintiff is attempting to do in this complaint. And I will follow *Eslinger* as I am required to. I am bound to follow Eleventh Circuit law. I don't see any ambiguity in the sentence. I don't see any reservation or carveout.

*See Doe*, Transcript from hearing on Motion to Dismiss, No.19-cv-21486-CMA, (S.D. Fla., Aug. 29, 2019) attached as Exhibit 3 at pp. 35:12-18. Therefore, based on the clear reasoning of

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

*Batterton* and the explicit holding in *Eslinger*, punitive damages are not an available remedy in personal injury actions under general maritime law following those decisions.[12]

### 2. Punitive Damages are Not Recoverable Under DOHSA

Moreover, punitive damages are non-pecuniary and are therefore prohibited under DOHSA. *See Kennedy v. Carnival Corp.,* 385 F. Supp. 3d 1302, 1319 (S.D. Fla. 2019), *report and recommendation adopted,* No. 18-20829-CIV, 2019 WL 2254962 (S.D. Fla. Mar. 21, 2019) ("because we have found that DOHSA governs the damages recoverable in this case, punitive damages are not recoverable as a matter of law.") Courts consistently reject plaintiffs' claims for punitive damages for claims governed by DOHSA. *See Murphy v. Carnival Corp*., 426 F. Supp. 3d 1288, 1292 (S.D. Fla. 2019) ("the Court strikes any damages claims which are not recoverable under DOHSA, including damages for companionship and protection, mental pain and suffering on behalf of the deceased's survivors, Mr. Murphy's pre-death pain and suffering, and punitive damages."); *Broberg v. Carnival Corp*., 303 F. Supp. 3d 1313, 1318 (S.D. Fla. 2017); *Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 3d 1264, 1269 (S.D. Fla. 2016); *Cubero v. Royal Caribbean Cruises Ltd.*, 2016 WL 4270216, at *4 (S.D. Fla. Aug. 15, 2016) (striking claim for punitive damages). Thus, even if punitive damages were available under general maritime law, they are precluded under DOHSA, and therefore Plaintiff is not entitled to them.

### 3. Plaintiff is Not Entitled to Punitive Damages Even Under a Pre-*Batterton/Eslinger* Analysis

Even under pre-*Batterton*/*Eslinger* analysis, Plaintiff's punitive damages allegations are

---

[12] Carnival acknowledges that another district court in the Eleventh Circuit has recently come to the opposite conclusion of the Court in *Doe v. NCL (Bahamas) Ltd. See Doe v. Carnival Corporation,* 2020 WL 3772102, *5-6 (S.D. Fla. June 26, 2020) (Ungaro, J.). However, that the *Eslinger* holding unequivocally states punitive damages are not allowable and cannot be disregarded.

insufficient to state a claim for relief. Prior to those cases, Courts required a plausible finding of *intentional* conduct necessary to sustain a punitive damages award. *See Kennedy,* 385 F.Supp.3d at 1328; *Bodner v. Royal Caribbean Cruises, Ltd.*, 2018 WL 4047119, *4-5 (S.D. Fla. May 8, 2018) ("the Eleventh Circuit [has] concluded that [punitive damages] were only available in 'exceptional circumstances,' such as 'those very rare situations of intentional wrongdoing.'") (quoting *In re Amtrak*, 121 F.3d at 1429).

Here, Plaintiff alleges, "Defendant's conduct, acts and/or omissions was intentional, willful, wanton, malicious, fraudulent, in bad faith and indicate an entire want of care which would raise the presumption of conscious indifference to consequences, entitling Plaintiff to recovery for punitive damages." [DE 1, ¶47]. However, there are no facts contained within the Complaint that establish any intentional misconduct by Carnival. Thus, there are no facts in Plaintiff's Complaint that Carnival acted intentionally with actual knowledge that its conduct would cause harm to its passengers. Without any such facts, Plaintiff's claim for punitive damages fails, even under a pre-*Batterton/Eslinger* analysis. Accordingly, Plaintiff's claims for punitive damages should be stricken.

WHEREFORE, Carnival respectfully requests this Honorable Court enter an Order dismissing Plaintiff's Complaint in its entirety *with prejudice,* and for all other relief this Court deems just and proper.

Dated:  August 14, 2020
      Miami, Florida

                    Respectfully submitted,

                    FOREMAN FRIEDMAN, PA

                    BY: /s/  Noah D. Silverman_____
                    Jeffrey E. Foreman, Esq. (FBN 0240310)
                    jforeman@fflegal.com
                    Noah Silverman, Esq. (FBN 401277)

nsilverman@fflegal.com
Foreman Friedman, P.A.
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, Florida 33131
Tel: (305) 358-6555
Fax: (305) 374-9077
*Attorneys for the Defendant*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on August 14, 2020, we electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document

is being served this day on all counsel of record or pro se parties identified on the attached Service

List in the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronic Notices of Electronic Filing.

By:    *Noah D. Silverman*
Noah Silverman, Esq.

## SERVICE LIST

| | |
|---|---|
| Ashleigh R. Madison<br>southeastlaw@gmail.com<br>Southeast Law, LLC<br>1703 Abercorn Street<br>Savannah, Georgia 31401<br>912.662.6612<br>*Attorneys for Plaintiffs*<br><br>Franklin D. Hayes, Esq.<br>fhayeslaw@yahoo.com<br>P.O. Box 2377<br>Douglas, GA 31533<br>*Attorneys for Plaintiffs* | Jeffrey E. Foreman, Esq.<br>jforeman@fflegal.com<br>kfehr@fflegal.com<br>Noah D. Silverman, Esq.<br>nsilverman@fflegal.com<br>pcampo@fflegal.com<br>Foreman Friedman, PA<br>One Biscayne Tower, Suite 2300<br>2 South Biscayne Boulevard<br>Miami, FL  33131<br>Phone: 305-358-6555<br>Fax: 305-374-9077<br>*Attorneys for Defendant* |